Shannon<br>v.<br>Langhorn.

---

James Druhan *v.* Lewis Adam, and Louis Adam *v.* James Druhan.

9 527<br>d121 209

It is the duty of a tenant so to use the property of which he has the possession, as not to destroy it; otherwise he is liable in damages.

APPEAL from the Third District Court of New Orleans, *Kennedy,* J.

*Clarke & Bayne,* for *James Druhan,* appellant. *T. W. Collins,* for *Louis Adam,* appellee.

Buchanan, J. *Adam* leased to *Druhan,* a feed merchant, a two story brick house belonging to the former. The lessee made use of the building leased, for storing grain. He had thus occupied the store for many years, when, on the night of the 3d of December, 1851, a portion of the joists which supported the floor of the second story, gave way in the centre, precipitating to the ground about nine hundred and fifty sacks of oats, weighing sixty-three to sixty-five pounds each, which (in addition to twelve or thirteen hundred more,) were stored in the second story, and carrying away a portion of the back wall of the building.

Cross actions were instituted by the landlord and by the tenant; the former claiming to be reimbursed the amount which he paid for repairing the building, alleging that the accident had been caused by the fault of the tenant in overloading it; and the latter claiming damages, upon an allegation that the accident was the result of an inherent defect in the building.

The two suits were consolidated by consent of parties, and tried together.

The case turns mainly upon questions of fact. Many witnesses have been examined, and their evidence leaves us in doubt what quantity of oats, in sacks, as a general rule, a store built in the manner of that occupied by *Dru-*

*han,* ought to be capable of containing with safety in its second story. There is one fact, however, which is proved by witnesses on both sides, and respecting which, therefore, there can exist no doubt. It is, that for some time, a number of days before the accident, the joists were observed to be yielding under the pressure of the oats stored in the second story, evidently menacing the disaster which ultimately befell; yet the tenant took no steps to prevent that disaster, by either placing temporary props or girders under the joists, or by removing a portion of the superincumbent weight; either of which measures, as the witnesses testify, would have had that effect. On the contrary, it is proved that the tenant, upon the landlord's making the observation to him, the very day before the accident, that he ought to have put girders underneath the joists, replied, " this was *Adam's* own look out."

We are of opinion, that the tenant, in this instance, mistook his own obligations and those of his landlord. It was his duty to have so used the property of which he had the possession, as not to destroy it. And when he perceived that the joists of the second story were cracking and bending beneath the weight which they supported, an indication that the weight was more than the joists could bear, he should have either diminished that weight, or have supported the floor by temporary props or girders. The furnishing of those temporary girders was no part of the repairs of the house, for which the landlord was liable. It appears from the evidence, that it is not usual to put permanent girders in a store of that size.

It is therefore adjudged and decreed, that the judgment of the District Court be affirmed, with costs.